George Beisheim, Jr., J.
This is an action for the reasonable value of legal services in the claimed amount of $5,000 rendered *550 by Joseph D. Errico, plaintiff, against defendants, Christina Ocker Manville and Eugene Ocker, the parents of Diana Ocker, who was born on April 3, 1958, it being alleged that the legal services rendered in opposing the mother’s application brought by writ of habeas corpus to transfer custody of the child from the father to the mother were necessaries for the child and that defendants, as natural parents of the child, were responsible for said necessaries.
The defendant, Eugene Ocker, was not served with the summons and complaint in the action but was served with a third-party complaint of defendant, Christina Ocker Manville, in which Mrs. Manville requests that, if it be determined that the plaintiff is entitled to judgment for the services rendered, that defendant, Eugene Ocker, as father of the child, be responsible to Mrs. Manville for the amount of judgment which may be awarded to the plaintiff against her. The defendant, Eugene Ocker, interposed an answer to the third-party complaint consisting of a denial of the primary allegations and an affirmative defense that the defendant and third-party plaintiff was solely responsible to the plaintiff for the value of the legal services rendered, but he did not appear at the trial either personally or by counsel.
The defendants in 1959 had entered into a separation agreement, under the terms of which custody of their daughter was awarded to the defendant, Eugene Ocker, and the defendant, Christina Ocker Manville, agreed to pay Eugene Ocker the sum of $150 a month for the support of said daughter. This rather unusual arrangement becomes more understandable by reason of the fact that shortly after the separation agreement was entered into between said defendants, Christina Ocker Manville procured a Mexican divorce dissolving her marriage with Eugene Ocker and thereafter married one Thomas P. Manville, a person allegedly possessed of great inherited wealth.
The defendant, Eugene Ocker, continued in custody of the child with the apparent acquiescence of the defendant, Christina Ocker Manville, until on or about November 28, 1967, when Mrs. Manville instituted a habeas corpus proceeding in the Supreme Court, Westchester County, to obtain custody of the child. It seems quite likely that the motivating cause for this proceeding was the fact that Thomas P. Manville had died on October 8, 1967.
In the habeas corpus proceeding, Eugene Ocker made application for cross relief requesting that the amount of support payable to him by Mrs. Manville for the child be increased from $150 to $500 a month, and requesting that Mrs. Manville *551 pay a counsel fee to the plaintiff, the attorney retained by Ocker to oppose the habeas corpus proceeding.
Mr. Justice Dillon, before whom the habeas corpus proceeding was tried, denied the application of Mrs. Manville to obtain custody and also denied the cross relief requested by Ocker to increase the amount of child support and to pay a counsel fee to the plaintiff herein. In denying the counsel fee, Mr. Justice Dillon stated: u There remains only the respondent’s request for a counsel fee. Section 237 of the Domestic Relations Law empowers the court in this form of proceeding to require the child’s father to pay the mother’s legal expenses; but no similar obligation is imposed upon the mother in favor of the father. The respondent relies on that portion of section 240 which authorizes the court to ‘ require the payment of a sum or sums of money either directly to the wife or to third persons for goods or services furnished for such child. ’ The argument is that the mother can be ordered, under this provision, to make direct payment to the father’s attorney for his services. The court cannot agree. When the two sections of the statute are read together, the legislative intent seems to be to confine the obligation to pay the other party’s counsel fees to the husband or father. Without express statutory authorization the court is without power to grant this form of relief, and the respondent’s request for a counsel fee must therefore be denied.”
The questions to be decided by this court are (1) whether Mr. Justice Dillon’s decision is res judicata of the issue before this court in plaintiff’s action for legal services as necessaries for the child; (2) in the event that the first question is decided in the negative, whether legal services rendered by an attorney retained by a husband and father of a child in habeas corpus proceedings are necessaries; (3) in the event that the second question is decided in the affirmative, whether the former wife and mother is liable for such necessaries under the facts in the instant case; (4) in the event that the aforesaid questions are determined in favor of the plaintiff, what was the reasonable value of plaintiff’s services; and (5) whether the defendant, Christina Ocker Manville, is entitled to recover as third-party plaintiff against the defendant, Eugene Ocker.
In respect to question (1), the court finds that Mr. Justice Dillon’s decision is limited to the narrow holding that a court could not summarily, in a habeas corpus proceeding under the authority of sections 237 and 240 of the Domestic Relations Law, award counsel fees against the former wife and mother to the attorney retained by the husband in such proceeding, and *552 did not pass upon the question of whether said attorney could recover such a fee in a separate action upon the theory that his services were necessaries rendered to a child for which the natural parents were responsible.
In respect to question (2), the court finds that legal services rendered in a habeas corpus proceeding wherein the former wife and mother seeks to alter the custody arrangements previously agreed upon by the mother and father in a ¡separation agreement are necessaries which were performed for the benefit of the child. (Friou v. Gentes, 11 A D 2d 124; Gutterman v. Langerman, 2 A D 2d 63.) The determination of custody by the court in a habeas corpus proceeding is not a determination of rights between parents, but is a determination solely for the best interests and welfare of the child. (Domestic Relations Law, §§ 70, 240; Matter of Bachman v. Mejias, 1 N Y 2d 575; People ex rel. Herzog v. Morgan, 287 N. Y. 317; Finlay v. Finlay, 240 N. Y. 429; People ex rel. Pritchett v. Pritchett, 1 A D 2d 1009, affd. 2 N Y 2d 947.)
In the Gutterman case (supra, pp. 64 — 65), the court held that legal services rendered by attorneys to increase support for children, first in a Supreme Court action, and later in a proceeding in the Domestic Relations Court, ‘ ‘ may have been necessaries ”. The court qualified the decision by the use of the word “may”, due to the fact that there was a question for the trial court whether the action brought in the Supreme Court, wherein the complaint was dismissed, was of any benefit to the children. In the Friou case (supra) where a husband instituted habeas corpus proceedings to obtain custody, Mr. Justice Beldock, speaking for the majority of the court, stated at pp. 126, 127:
“ The general rule is that, where the court has fixed the amount of alimony to be paid to a wife for her support, the husband’s liability therefor is confined to the amount of the award. * * * However, there are several exceptions to the general rule. One, which is inapplicable here, is that, where affirmative action is taken in this State against a defendant to obtain relief not barred by the foreign judgment, he is liable for the services which accomplish that result. (Gutterman v. Langerman, 2 A D 2d 63.) The other, which is applicable here, is that, where the defendant takes affirmative action to change the matrimonial judgment (Fox v. Fox, 263 N. Y. 68; Goldberg v. Keller, 236 App. Div. 541) or fails to obey the judgment (Goldberg v. Keller, supra; Kommel v. Karron, 152 Misc. 294) or otherwise flouts the provisions of the judgment *553 (Cohen v. Kosch, 196 Misc. 1057), he is liable for the legal services made necessary by his action.
1 ‘ Here the respondent is entitled to recover because appellant, long after the entry of the Vermont divorce judgment, brought an affirmative proceeding in this State to vary one of the provisions of the judgment, thus necessitating the employment of respondent to uphold its provisions. In such event, the support provisions of the judgment no longer constitute the limit of appellant’s liability for the necessary legal services furnished, either to the former wife or to the children, in the proceeding. ’ ’
In respect to question (3), the court finds that the plaintiff is entitled to judgment against defendant, Christina Ocker Manville, the former wife and mother, for such necessaries, bearing in mind that defendant, Eugene Ocker, the father and former husband, was never served with process by the plaintiff herein, although he was served with the defendant mother’s third-party complaint.
Friou v. Gentes (supra) and Gutterman v. Langerman (supra) both held that the husband and father was liable for legal services rendered for the benefit of a child. Counsel has not furnished the court, and the court has been unable to find any case where the wife and mother has been held responsible for legal services rendered to her child where the father of the child was alive. The question appears to be one of first impression in this State.
However, a parent’s liability for such necessaries is not predicated solely upon the statutory authority prescribed in sections 237 and 240 of the Domestic Relations Law. The remedy therein provided is not exclusive. (Friou v. Gentes, supra; Report of Joint Legis. Comm. on Matrimonial and Family Laws, p. 81; see N. Y. Legis. Doc., 1961, No. 19, p. 81.) Section 81 of the Domestic Relations Law provides that “A married woman is a joint guardian of her children with her husband, with equal powers, rights and duties in regard to them”. The duty to support and maintain an infant child is recognized as resting upon the parents of the children. (Furman v. Van Sise, 56 N. Y. 435; Santasiero v. Briggs, 278 App. Div. 15; 16 N. Y. Jur., Domestic Relations, § 560.) As part of the duty of a parent to support and maintain his or her children, a parent is under the obligation to provide them with necessaries. (Friou v. Gentes and Gutterman v. Langerman, supra.) A parent who has the duty of support and maintenance is liable to a third person who supplies the child with necessaries where the necessaries were furnished for the child on the credit of the *554 parent (Siegel v. Hodges, 20 Misc 2d 243, affd. 10 A D 2d 646, affd. 9 N Y 2d 747), and the parent may discharge said obligation for necessaries by supplying those necessaries or by an adequate allowance so that the child may procure them himself. (Friou v. Gentes, supra; Gutterman v. Langerman, supra; Krieger v. Krieger, 162 Misc. 930.) “ An agreement on the part of a wife making her personally liable for necessaries furnished her may be found upon evidence and surrounding circumstances ” (16 N. Y. Jur., Domestic Relations, § 655; Matter of Totten, 137 App. Div. 273; Stahler v. Van Leuven, 21 Misc 2d 512).
The financial circumstances of the parties at the time of the habeas corpus proceeding and the separation agreement between the parties are relevant to the determination of this question. The testimony at trial revealed that the mother had an investment income of at least $12,000 per year and a prospective income much greater if the will of her deceased second husband should be admitted to probate by the Surrogate of Westchester County. The father’s income as a barber was a little over $100 a week.
The separation agreement between the father (termed “ husband ” therein) and mother (termed “wife” therein), dated the 30th day of September, 1959, provided, in part, as follows:
‘ ‘ fifth : The parties hereto agree that it is for the best interest and welfare of the infant issue that the child continue to remain with and reside with the husband and by reason thereof the parties hereto agree that the husband shall have sole custody of said infant issue with reasonable rights of visitation to the wife at all times with due regard to the welfare and interest of the child.
“ sixth: In view of the further fact that the means of the husband are limited and that the wife acknowledges her responsibility for the care and maintenance of the said infant, the wife agrees to contribute the sum of $150.00 per month towards the maintenance and care of the said infant issue payable on the 1st day of each month commencing as of October 1,1959.
‘ ‘ eighth : In furtherance of the foregoing, the parties hereto agree that in the event that the said child shall attend a private school, either elementary, secondary or college, that they shall contribute proportionately towards the cost thereof based on the respective means and income of the parties as then existing, it being the intent of the parties hereto that the child shall have all possible care and education consistent with the means and income of the respective parties.”
*555 The record reveals that Mrs. Manville had been paying the $150 a month prescribed in paragraph “sixth” of the separation agreement. This was a recognition on her part that under the special circumstances of this case, that she, rather than the father, was responsible for the larger part of the child’s support. She so conceded in paragraph “ sixth ” of the agreement. This fact was known to the plaintiff, and relied upon by him, when he agreed to represent the child in opposing the mother’s application brought by writ of habeas corpus to transfer the custody of the child from the father to the mother in contravention to what said parents had agreed under paragraph “ fifth ” of the separation agreement. (See Siegel v. Hodges, 20 Misc 2d 243, affd. 10 A D 2d 646, affd. 9 N Y 2d 747, supra.) Further, the mother agreed under paragraph “ eighth ” of the separation agreement to pay an additional amount for the child’s education proportionate to the income of the father and herself at the time such expenditure might occur. From the foregoing, an agreement may be implied for the mother to pay a proportionate share of the legal expenses rendered by the plaintiff in opposing the habeas corpus proceeding, particularly viewed in the light that said expenses were made necessary by the affirmative action of the mother in instituting the proceeding. Therefore, the plaintiff would be entitled to obtain a judgment for the reasonable value of the legal services he rendered the child against both parents, if both had been served with the summons and complaint in this action. Since plaintiff served only Christina Ocker Manville with process, his judgment is limited to that defendant.
In respect to question (4), the court finds that the reasonable value of the legal services rendered by plaintiff on behalf of the child in opposing the habeas corpus proceeding was in the sum of $2,500.
In respect to question (5), the court finds that defendant, Christina Ocker Manville, as third-party plaintiff, is entitled to contribution from defendant, Eugene Ocker, of a proportionate share of the judgment recovered by plaintiff against her, based upon the ratio of the income of Eugene Ocker, $5,000, to the total income of Ocker and Mrs. Manville, $17,000, which the court finds to be five-seventeenths of $2,500. (Asylum of St. Vincent de Paul v. McGuire, 239 N. Y. 375.)
Accordingly, judgment should be entered in favor of plaintiff against the defendant, Christina Ocker Manville, in the sum of $2,500, with a provision therein directing contribution by *556 Eugene Ocker to Christina Ocker Manville in the sum of $735.29 plus a proportionate share of the interest and costs, in the event that said $2,500 plus interest and costs are paid by Mrs. Manville.